**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JOHN C. WILLIAMS, | ) | |
| 9725 Winding Way Ln. | ) | |
| Jonesboro, GA 30238 | ) | Case No. |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| MIGUEL CARDONA, | ) | **JURY TRIAL DEMANDED** |
| Secretary of the Department of | ) | |
| Education | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |
| Serve: | ) | |
| Office of the General Counsel | ) | |
| U.S. Department of Education | ) | |
| 400 Maryland Ave., SW | ) | |
| Washington, DC 20202 | ) | |
| | ) | |
| United States Attorney | ) | |
| 57 Pennsylvania Ave. NW | ) | |
| Washington, DC 20530 | ) | |
| | ) | |
| United States Attorney General | ) | |
| 950 Pennsylvania Ave. NW | ) | |
| Washington, DC 20530 | ) | |
| _____ | ) | |

**COMPLAINT FOR INJUNCTIVE AND COMPENSATORY RELIEF**

Comes now Plaintiff, John C. Williams (hereinafter "Plaintiff" or "Mr. Williams") by and

through undersigned Counsel, with his Complaint for Injunctive and Compensatory relief, against

Defendant Department of Education- Federal Student Aid  (hereinafter "Defendant" or "DOE")

and states as follows:

1

## INTRODUCTION

Plaintiff is an African American male employee at the DOE, who was hired in May of 2016 to be a GS-1102 Grade 14- Step 10 Contract Specialist for the DOE, Office of Federal Student Aid (hereinafter "FSA").  Mr. Williams had decades of federal contracting experience and Government and Civilian training from previously held federal contracting positions.  In December 2016, for reasons that have never been explained by DOE, a training coordinator determined that DOE would no longer honor or accept the training certifications and experience that Mr. Williams had. On or about May 29, 2020, FSA demoted Mr. Williams from his position of GS 1102-14 Step 10 to a GS 1102-12, and informed him that he would have to retake years of training courses he had completed over the past twenty plus years.

In February of 2019, Mr. Williams filed a complaint with the Merit Systems Protection Board, and in December of 2019, Administrative Law Judge Alexander Thompson, (hereinafter "ALJ" or "Judge Thompson") held a hearing, and issued a preliminary ruling completely vindicating Plaintiff, and ordering that he be returned back to the GS-14 Step 10 pay grade, be given back pay for lost wages, and allowed to continue his work with the credentials he had.

DOE appealed the ALJ's decision to the Board, however the Board had insufficient members to rule on anything, and the appeal has languished.  Despite the clear instruction of the ALJ's ruling, which provided Mr. Williams interim relief, DOE adamantly refused to abide by the ALJ order.  DOE returned Plaintiff to the GS-14 Step 10 grade, but it refused to pay him owed back wages, and refused to honor his certifications and allow him to do the work he was hired to do.

At the time that Plaintiff filed his MSPB claim, he also filed an EEOC charge, alleging that he was being discriminated against because of his race.  Importantly, Plaintiff's MPSB claim did

not raise race discrimination as a claim, so the claims were not duplicative.  It only alleged that his demotion and decertification were unjustified. The retaliation against Plaintiff has escalated since his filings, and to this day, DOE has refused to honor the ruling of the ALJ, and has continued to engage in retaliation via adverse actions, and the creation of a hostile work environment. Plaintiff's Title VII claims are now ripe for adjudication in this Court.

Plaintiff, herein, bring claims pursuant to the Title VII of the Civil Rights Act of 1967, 42 U.S.C. §§ 2000 (e), et seq., The Age Discrimination in Employment Act, and the District of Columbia Human Rights Act of 1967, 29 U.S.C. §§621, *et seq*., and seeks injunctive relief and compensatory damages for the DOE's blatant retaliation and harassment against him for engaging in protected activity, and for its racially discriminatory treatment.

## **PARTIES**

1.      Plaintiff, John C. Williams, is a sixty-eight (68) year old, African American male, a US Air Force Veteran  and resident of Georgia, who works both in the Atlanta Office of the DOE, and remotely for the DOE, on matters pertaining to the  Government Contracts and Policy Issues  in the FSA Acquisition Department . He has been employed with the DOE since 2016.

Defendant is a federal agency, headquartered in the District of Columbia, that administers federal funds and regulates educational institutions.  The Secretary of the Department of Education is Miguel Cardona.  The head of the Federal Student Aid program is Richard Codray , who works out of the District of Columbia DOE Headquarters (hereinafter "Headquarters").

## JURISDICTION AND VENUE

2.      This Court enjoys jurisdiction over this matter because it brings claims pursuant to the laws of the United States.  Venue is appropriate in this jurisdiction because all final decision-makers who are relevant to this matter work out of the DOE Headquarters located in the District of Columbia, and because Plaintiff began his employment with DOE in Washington, DC.

## RELEVANT FACTS

3.      Mr. Williams was interviewed and hired by Federal Student Aid to be in the policy department, as a GS 14 Step 10 Contracts Specialists in May 2016.

4.      Plaintiff was hired into, and worked at the DOE headquarters building in the District of Columbia.  When Plaintiff first reported to the FSA, he was welcomed as a Contracting Officer, which differed from what he was hired for.

5.      From May of 2016 until December of 2016, Plaintiff was working in the role for which he was hired as a Contracting Specialists , but without a warrant, which is essentially a permit to sign large contracts.

6.      During that period, Plaintiff was working for Andrew Jernell, who served as Plaintiff's immediate supervisor.   Mr. Jernell reviewed the documentation of Plaintiff's certifications and training, and instructed Plaintiff to upload all of those records into the FAITAS system, which is a federal system for housing and verifications of records.

7.      After Mr. Williams uploaded everything, Bethanne Roberts (white female) (hereinafter "Ms. Roberts"), the training coordinator for FSA, who was a GS-13, decided that Plaintiff lacked the certification and training for the Contracting Officer position.

8.      When Plaintiff informed Mr. Jernell about Ms. Robert's conclusions, he strongly disagreed with her assessment, and told Plaintiff that there was no way that Ms. Roberts should have rejected Plaintiff's certifications and credentials.

9.      Furthermore, another supervisor from the Policy Department, Janet Carlson (hereinafter "Ms. Carlson"), a GS-15- Policy  Supervisor , whom Mr. Williams was slated to work for when he was hired by FSA, reviewed Plaintiff's records and credentials and also concluded that Plaintiff's documentation was more than adequate, and in fact, surpassed her own, in terms of establishing proper training and certification.

10.     Plaintiff asserts that Ms. Roberts held racially biased attitudes, and that she rejected Plaintiff's records out of spite and racial animus.

11.     Plaintiff asserts that Ms. Roberts singled him out, and held him to different standards than any of this colleagues at FSA.

12.     Plaintiff further asserts that Ms. Roberts held lower regard for him because of his age, and because she felt his skills and mental sharpness were not sufficient for the role he was hired into.

13.     Ms. Roberts, of her own volition, concluded that Plaintiff, who obtained much of his training and certification while in the military, and while working for the Department of Defense, lacked "sufficient proof" of his training activities, by randomly creating a proof standard that she did not apply to white Contracting Officers.

14.     On information and belief, no other FSA employee was held to the proof standard that Ms. Roberts concocted to apply only to Plaintiff.

15.     Ms. Roberts denied Mr. Williams his FAC-C certification in December of 2016.  Ms. Roberts retired from FSA, and transitioned the role to Angie Leonard (hereinafter "Ms. Leonard"), who is also a white female GS-13.

16.     Plaintiff alleges that Ms. Williams harbored many of the same racially biased and discriminatory biases as Ms. Roberts, and was indoctrinated into disfavoring Mr. Williams by Ms. Roberts during the period of time they worked together prior to the transition.

17.     For approximately two years, Plaintiff performed the duties of a Contracting Officer, even though he could not ultimately sign the contracts he drafted.  Because his supervisor ensured that Mr. Williams continued to be paid at the GS-14 level, and because Mr. Jernell  assured Plaintiff that things would work out, Plaintiff believed that the conflict about his credentials would be resolved.

18.     In December of 2018, Mr. Williams was allowed to work out of the Atlanta Georgia Office because his mother was sick.  However, his entire supervisory chain of command continued to be in the District of Columbia.

19.     In early 2019, FSA decided to unilaterally move Plaintiff from the IT security contracts, to the Federal Student Aid Loans department, and give him a new supervisor, by the name of Joshua Burris (hereinafter "Mr. Burris"), who is a white male.

20.     Almost immediately thereafter, Mr. Burris informed Plaintiff that he was going to be demoted to a GS-12 rank, and have all of his certifications discounted because of Ms. Leonard's baseless representation that Mr. Williams did not have sufficient proof of his training.

21.     Plaintiff immediately complained to Mr. Burris's supervisors that what Mr. Burris was doing to him was unfair, unlawful, and based on racial animus, thus engaging in statutorily protected activity.  Mr. Williams complained to the Chief of Staff, Pat Gwaltney (hereinafter "Ms. Gwaltney"), and he filed a discrimination complaint with the DOE EEO office.

22.     After investigating Plaintiff's claim, the EEO officer recommended that the parties go to mediation to resolve the dispute.  However, mediation was not successful, and Mr. Williams was forced to file his EEOC and MSPB charges.

23.     In February of 2019, Plaintiff filed his EEOC charge, alleging that FSA was engaging in systematic race and age discrimination against him, of which his unfair demotion was simply one element.  His EEOC charge also alleged retaliation for complaining about the discriminatory and hostile work environment he was subjected to.

24.     On or about February 29, 2019, Appellant filed for MSPB review of the Department of Education's decision to reduce him from his grade and position as a GS 14 – Step 10, 1102 Contracts Specialists, to a GS-12 -1102 Contracts Specialists.

25.     Plaintiff's MSPB appeal did not allege race discrimination.  It simply asserted that his demotion and denial of credit for certifications was unjustified and against DOE policy.

26.     At the end of 2020, a hearing was held before the MSPB Administrative Law Judge, in which Plaintiff and the FSA were allowed to put on evidence and live testimony.

27.     On or about January 29, 2021, the Judge Thompson handed down a decision _reversing_ the Agency's demotion decision and making material findings of fact and rulings favorable to Appellant.

28.     Judge Thompson's order instructed the Agency to grant Appellant the pay grade of GS-14, and to make him financially whole.  A copy of Judge Thompson's decision is attached hereto as EXHIBIT 1.

29.     In February of 2021, the Agency partially complied with Judge Thompson's order to restore Appellant to GS-14 step 10.  However, it recalcitrantly refused to comply with substantial parts of the interim relief owed to Appellant, including making him whole for the loss of pay and

giving him the FAC-C certification so that he can execute his duties.  For months, Appellant has been waiting for and expecting the payment of back pay.

30.     Moreover, in lieu of complying with the ALJ's order, in recent months the Agency has unilaterally decided to make Appellant go back and re-take even more of his certification courses that he took more than twenty years, thus frustrating and undermining the ALJ's award.

31.     Put simply, the Agency found another way to collaterally attack Appellant's credentials, to deny him the benefits of his employment, and to circumvent the binding decision of the ALJ.

32.     In accordance with the ALJ's decision, Appellant timely filed a Petition for Enforcement of the Decision and Order, outlining the various violations of the Agency, and asking the MSPB to exercise its authority over the Agency to order it to cease and desist from defying the Decision and Order.

33.     Additionally, Plaintiff hired undersigned counsel, and indicated to the EEOC that he was planning to file suit in federal court to pursue his Title VII claims.

34.     Shortly after filing the Petition for enforcement, the FSA escalated its retaliation against Plaintiff for engaging in protected activity in seeking to vindicate his rights at the MSPB and EEOC, by removing additional certificates from Plaintiff's accreditations and making him redo even more training he had completed years ago.

35.     In addition to the adverse actions taken against Plaintiff, Defendant has created a hostile work environment for Plaintiff, subjecting him to harsher and more stringent scrutiny than his white colleagues, denigrating and demeaning him on a frequent basis, constantly and repeatedly attacking his reputation, and subjecting him to different terms and conditions of employment.

36.     Moreover, whenever Plaintiff signs up for a federally funded or sponsored class or course, Lavone Shingler (hereinafter "Ms. Shingler"), Plaintiff's current supervisor, removes him from

the class or training, thus denying him training opportunities and points towards certifications that are granted to younger, and non-African American FSA employees.

37.    Plaintiff asserts that the hostile work environment he is enduring has escalated commensurate to his protected, and that Ms. Shingler and Ms. Leonard are acting on Mr. Burris' racial animus and disdain for older workers.

38.    The ongoing race and age discrimination that Plaintiff has endured has also affected his ability to be promoted and has harmed his career.

39.    Furthermore, Plaintiff asserts that he is continuing to be subjected to disparate pay because of the denial of his back pay award, and the consequence thereof on his retirement annuity.

## CLAIMS

### COUNT I

*(Violation of Title VII of the Civil Rights Act,*
*42 U.S.C. § 2000(e) et seq.—Race Discrimination & Retaliation)*

40.    Plaintiff reasserts all allegations in the previous paragraphs as if fully restated herein.

41.    Plaintiff is a member of a protected class, African American.

42.    From 2016 through the time he was transferred to the Federal Student Aid Loan department, Plaintiff was doing all of the work of a GS-14 Contracting Officer, except signing the contracts themselves, and was praised for the work he was doing by his supervisor, Mr. Jernell.

43.    Plaintiff asserts that he was denied credit for his training and certification by Ms. Roberts, and later by Ms. Leonard because they both harbored animus against him because of his race, African American, and held him to completely different certification standards that non-African American employees.

44.     The ALJ decision, and the transcript of the ALJ hearing, establish that Ms. Leonard and Mr. Burris did not have legitimate reasons for the way they treated Plaintiff.

45.     Plaintiff engaged in protected activity when he complained of race discrimination and the creation of a hostile work environment based on race, when he complained to the Chief of Staff of DOE and to the DOE EEO department, about the unjustified and unfair demotion and removal of certifications that was initiated by Mr. Burris.

46.     Immediately after being demoted, Plaintiff has been subjected to an ongoing hostile work environment, in which he has regularly been denigrated, subjected to unfair and disparate terms and conditions of employment, had his reputation and work product attacked and has been continually denied training opportunities.

47.     As a direct and proximate cause of Defendant's racially-biased treatment of Plaintiff, Mr. Williams has suffered lost wages, damage to his reputation, severe mental and emotional anxiety and stress and loss of retirement benefits he would otherwise be due.

48.     Plaintiff now seeks injunctive relief by way of a cease and desist ORDER, enjoining Defendant from continuing its ongoing campaign to attack Plaintiff's reputation and to deny him training and other work opportunities.

49.     Plaintiff further seeks money damages, including back pay with interest and attorney's fees, of not less than $500,000.

**COUNT II**

*(Violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e), et seq.*
*Violation of the Paycheck Fairness Act)*

50.     Plaintiff reasserts all allegations in the previous paragraphs as if fully restated herein.

51.     For a year, Plaintiff was unfairly underpaid for the work he was doing because he was demoted unjustly because of his race.

52.     Plaintiff was given an award of back pay, to make him whole, by the ALJ, but Defendant has refused to abide by that order.

53.     The wages that have been unfairly and unlawfully withheld from Plaintiff are having an ongoing deleterious effect on Plaintiff's retirement annuity, and are thus creating an ongoing injury to Plaintiff with every paycheck that he receives.

54.     Plaintiff now seeks all damages and remedies available to him under applicable law, as determined by the Paycheck Fairness Act, as incorporated into Title VII.


**COUNT III**

(*Violation of the Age Discrimination in Employment Act,*
*29 U.S.C. §§ 621, et seq.*)

55.     Plaintiff reasserts all allegations in the previous paragraphs as if fully restated herein.

56.     Plaintiff is sixty-eight (68) years old.  At the time he was hired by Defendant, he was sixty-two (62) years old, which places him in a protected class

57.     Plaintiff is a qualified employee, hired to be a GS-14, step 10 Contracting Officer.

58.     Plaintiff was systematically deprived of the rights and privileges of his position, was unfairly and improperly demoted, was denied back pay, and continues to be retaliated against, at least in part, because of his age.

59.     Defendant's treatment of Plaintiff is without justification, and in direct violation of findings by an ALJ.

60.     Defendant's treatment was disparate and substantially harsher and more punitive than its treatment of  younger workers with similar job duties.

61.     Defendant's treatment of Plaintiff is motivated by animus towards his age, and a belief that that his skills and mental abilities are no longer valuable.

62.     Defendant's treatment of Plaintiff amounted to constant, daily and repeated humiliations, attacks on his honesty and reputation, subjecting him to disparate rules than his colleagues, depriving him of training and developmental opportunities, and treating him as a less valuable contributor to FSA.

63.     As a direct and proximate cause of Defendant's treatment of Plaintiff, he has suffered lost wages and benefits, damage to his reputation, and severe mental and emotional anguish.

64.     Plaintiff now seeks compensation in an amount of not less than $300,000.00, as well as interest and attorney's fees.

## PRAYER FOR INJUCTIVE RELIEF

65.     In addition to compensatory relief, Plaintiff asks this Court for an ORDER mandating that FSA ceases and desists from pulling Plaintiff out of training courses he is taking, and otherwise denying him training opportunities.

66.     Plaintiff asks this Court for an ORDER, mandating that FSA give Plaintiff credit for his certifications in accordance with the ruling of the ALJ, and give him all permits and permissions necessary to conduct his work.

67.     Plaintiff asks the Court for a make-whole remedy that ensures that any amounts he has lost in his pension annuity, as a result of Defendant's actions be restored with interest.

## JURY DEMAND

68.     Plaintiff demands trial by jury on all matters so triable.

Respectfully submitted,

___/s/Pamela M. Keith
Pamela M. Keith [Bar. No. 448421]
CENTER FOR EMPLOYMENT JUSTICE
650 Massachusetts Ave. NW
Suite 600
Washington, DC 20001
Tel: (202) 800-0292
Fax: (202) 807-5725
pamkeith@centerforemploymentjustice.com
*Counsel for Plaintiff*