UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN C. WILLIAMS,

      *Plaintiff*,

v.

MIGUEL ANGEL CARDONA,

      *Defendant*.

Civil Action No. 22-1917 (LLA)

**MEMORANDUM OPINION AND ORDER**

      Plaintiff John C. Williams brings this action against Defendant Miguel Angel Cardona in his official capacity as the Secretary of Education.  Mr. Williams alleges that his former employer, the Department of Education ("the Agency"), discriminated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*.  Pending before the court are the Agency's Motion to Dismiss the Complaint in Part, ECF No. 30, and Mr. Williams's Motion for Leave to File a Third Amended Complaint, ECF No. 32.  For the reasons explained below, the court will grant the Agency's partial motion to dismiss and deny Mr. Williams's motion to amend.

      **I.**      **Factual Background**

      The following factual allegations from Mr. Williams's second amended complaint, ECF No. 28, are accepted as true for purposes of evaluating the motions before the court.  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).  The court further takes judicial notice of attached documents from earlier administrative proceedings.  *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018) (explaining that "[i]n employment discrimination

cases, courts often take judicial notice of [Equal Employment Opportunity Commission ("EEOC")] charges and EEOC decisions" and collecting cases).

Mr. Williams, a sixty-eight year-old African American man, began working for the Agency in 2016. ECF No. 28 ¶¶ 1, 29. He had been hired as a Contracts Specialist, with a salary at the GS 14-10 level. *Id.* ¶ 29. However, when he started work, he was on-boarded as a Contracting Officer—a role similar to a Contract Specialist, but which lacks authority to sign large contracts. *Id.* ¶¶ 30-31. To work as a Contract Specialist, Mr. Williams needed to obtain a FAC-C certification. *See id.* at 1.

Mr. Williams "had decades of federal contracting experience . . . and was already doing the work of the FAC-C contractor." *Id.* ¶ 35. To get his FAC-C certification, Mr. Williams provided his relevant certifications and training records to Bethanne Roberts, the training coordinator for his department, but she determined that his documentation did not meet the Agency's requirements. *Id.* ¶¶ 32-33. Mr. Williams's supervisor, Andrew Jernell, and another supervisor in the department disagreed with Ms. Roberts's assessment. *Id.* ¶¶ 32, 34, 36. They told Mr. Williams that his certifications were sufficient. *Id.* ¶ 34, 36. Ms. Roberts officially denied Mr. Williams's request for a FAC-C certification in December 2016. *Id.* ¶ 41. Mr. Williams continued to work in a role where "he could not . . . sign the contracts he drafted" for approximately two years, but he continued to be paid at the GS 14-10 level of a Contracts Specialist. *Id.* ¶ 44.

At the beginning of 2019, Mr. Williams moved to a new department and was consequently assigned a new supervisor, Joshua Burris. *Id.* at ¶ 46. Mr. Williams attempted to work with Mr. Burris to obtain his FAC-C certification based on coursework he had completed and through a "fulfillment" process, relying on his on-the-job experience as a basis for the certification, but

2

Mr. Burris rejected both efforts. *Id.* at ¶¶ 47, 50. In September 2019, Mr. Williams lodged an internal equal employment opportunity ("EEO") complaint alleging that Mr. Burris's "refusal to give him credit for his coursework and experience was unjustified" and differed from the way other employees had been treated. *Id.* ¶ 48; *see* 29 C.F.R. § 1614.105 (explaining the internal EEO process). Mr. Williams alleges that shortly after filing the complaint, the Agency "escalated its retaliation against [him] for engaging in protected activity[] by removing additional certificates from [his] accreditations and making him redo even more training he had completed years ago." ECF No. 28 ¶ 82.

In November 2019, Mr. Burris formally rejected the fulfillment method and informed Mr. Williams that he would be demoted to a GS-12 pay grade due to his lack of an FAC-C certification. ECF No. 28 ¶¶ 52-53. Shortly after, Mr. Williams complained to Mr. Burris's superior, Pat Gwaltney, about the decision and alleged that it was based on racial animus. *Id.* ¶ 54. At that time, Mr. Williams amended his September 2019 EEO complaint to allege that the final rejection of his FAC-C certification was based on race and age. *Id.* ¶ 55.

Mr. Williams's informal complaint escalated to a formal charge on February 7, 2020. *Id.* ¶¶ 10, 56; *see* 29 C.F.R. § 1614.106 (explaining the process for a formal complaint). "After several amendments," Mr. Williams's formal complaint "contained allegations related to being denied the FAC-C based on unfair and discriminatory scrutiny of his course work, unfair and disparate rejection of his fulfillment package, and disparate and discriminatory demotion to GS-12." ECF No. 28 ¶ 18. Mr. Williams alleges that after his complaint was escalated, Lavon Shingler, the training supervisor, began denying him permission to attend training courses and requiring that he obtain preapproval before attending courses. ECF No. 28 ¶¶ 21, 61, 83, 86. At one point, she

3

"humiliated [him] by unilaterally removing him from training classes he was attending[] and demanding that he not attend classes which were necessary for his job."  *Id.* ¶ 84.

Mr. Williams's demotion was finalized in May 2020, when Mr. Burris's superior issued the final decision.  *Id.* ¶ 13.  Mr. Williams separately appealed the reduction in pay grade and the denial of his FAC-C certification to the Merit Systems Protection Board ("MSPB") at the end of that month, alleging that these decisions violated Agency policies.[1]  *Id.* ¶ 14, 55, 57, 59.  After a hearing, an MSPB Administrative Law Judge ("ALJ") issued an order reversing the Agency's demotion decision.  *Id.* ¶ 63; ECF No. 1-5.  The order required the Agency to give Mr. Williams the FAC-C certification, restore him to a GS-14 pay grade, and remit back pay once the order became final.  ECF No. 28 ¶ 64; ECF No. 1-5, at 12-13.  The Agency appealed the decision to the full Board, which reversed due to a legal error in the ALJ's interpretation of which credit hours could be counted toward the FAC-C certification.  ECF No. 28 ¶ 66; *id.* at 2.  The Board remanded the matter for the ALJ to consider whether Mr. Williams had satisfied the requirements of the fulfillment method for an FAC-C.  *Id.* at 2.

Mr. Williams filed a second informal EEO complaint in March 2022, addressing the continued denial of his FAC-C certification, the denial of training opportunities, and negative treatment by Ms. Shingler.  *Id.* ¶ 21.

In his complaint before this court, Mr. Williams alleges several other incidents of discrimination but does not clarify when they occurred.  For example, "on more than one occasion, Mr. Burris demanded to know when [Mr. Williams] was going to retire," but he did not ask the

---

[1] The MSPB is "an independent adjudicator of federal employment disputes."  *Perry v. Raimondo*, 101 F.4th 55, 58 (D.C. Cir. 2024) (quoting *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012)).  Claims are typically decided in the first instance by an ALJ and can then be appealed to the Board.  *See id.* at 60.

same of younger colleagues. *Id.* ¶ 80.  Mr. Burris also rated Mr. Williams as "failing his duties" after he filed the 2019 EEO Complaint, whereas Mr. Jernell, his previous supervisor, had given him a satisfactory evaluation.  *Id.* ¶ 88.  Another individual, Genesis Griffin, "subject[ed] him to constant unwarranted criticism, humiliating comments, and bullying." *Id.* ¶ 87.  Mr. Williams also alleges that "Defendant" subjected him to "harsher and more stringent scrutiny than his white colleagues, denigrating and demeaning him on a frequent basis, constantly and repeatedly attacking his reputation, and subjecting him to different terms and conditions of employment." *Id.* ¶ 90.  He asserts that "Ms. Shingler's behavior, in conjunction with Mr. Burris' permissiveness, caused [him] severe anxiety and stress[] that has caused him to lose sleep[] and suffer from hypertension." *Id.* ¶ 94.

## II.     Procedural History

Mr. Williams brought this action in July 2022, alleging retaliation (Count I), hostile work environment (Count II), disparate treatment on the basis of race (Count III), and disparate treatment on the basis of age (Count IV).  After the Agency filed a motion to dismiss, Mr. Williams filed an amended complaint in April 2023.  ECF Nos. 14, 16.  The Agency again moved to dismiss, and Mr. Williams sought leave to file a second amended complaint, which the court granted in August 2023.  ECF Nos. 19, 21; Aug. 4, 2023 Minute Order.  The Agency filed a third motion to dismiss the complaint in part, which has been fully briefed.  ECF Nos. 30, 33, 35.  In addition to opposing dismissal, Mr. Williams filed a motion seeking to file a third amended complaint, which has also been fully briefed.  ECF Nos. 32, 36, 28.  In December 2023, the case was reassigned to the undersigned.  Dec. 14, 2023 Dkt. Entry.

### III.   Legal Standards

### A.   Motion to Dismiss

In assessing a motion to dismiss under Rule 12(b)(6), "a judge must accept as true all of the factual allegations contained in the complaint" and construe all reasonable inferences in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "If a Title VII plaintiff fails to plead 'sufficient factual matter' to state a discrimination claim that is 'plausible on its face,' then the district court should dismiss the case before discovery." *Chambers v. District of Columbia*, 35 F.4th 870, 878 (D.C. Cir. 2022) (en banc) (quoting *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015)).

### B.   Leave to Amend the Complaint

Pursuant to Federal Rule of Civil Procedure 15, a party may amend its pleading once as a matter of course, and thereafter "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). The court should freely grant such leave "when justice so requires." *Id.* "[T]he grant or denial of leave to amend is committed to a district court's discretion." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). However, "it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by [previous] amendments . . . [or] futility of amendment.'" *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Amendment is futile "if

6

the proposed claim would not survive a motion to dismiss." *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996). This is typically the case when the amendment "merely restates the same facts" or "fails to state a legal theory." *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002).

### IV. Discussion

In its motion to dismiss, the Agency argues that Mr. Williams has not properly exhausted his claims and that his complaint fails to state a claim for relief for retaliation (Count I), hostile work environment (Count II) and one subset of his race discrimination claims (Count III). ECF No. 30. In opposing Mr. Williams's motion to amend, the Agency contends that the third amended complaint suffers from the same defects as the second amended complaint and amendment would thus be futile. ECF No. 35, at 1. Mr. Williams counters that the second amended complaint can withstand a motion to dismiss but that leave to amend should be granted as in the interest of justice. ECF Nos. 32, 38. The court will grant the Agency's motion to dismiss in part and deny Mr. Williams's motion to file a third amended complaint as futile.

#### A. Exhaustion and Election of Remedies

A plaintiff may not initiate a civil action under Title VII or the ADEA until he has timely exhausted his administrative remedies for each discrete discriminatory act. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Coleman v. Duke*, 867 F.3d 204, 206 (D.C. Cir. 2017). Exhaustion allows federal agencies "to handle matters internally whenever possible." *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985). The Agency argues that Mr. Williams failed to exhaust his claims of retaliation and hostile work environment and some aspects of his race- and age-discrimination claims, either because he did not timely include them in his EEO complaints or because he filed suit too early. ECF No. 30-1, at 5-8. It also contends that any claims related

to his demotion are foreclosed because he elected to appeal that determination to the MSPB. *Id.* at 4-5. The court agrees.

### 1. Exhaustion

Federal employees must "initiate contact" with their Agency's EEO Counselor within forty-five days of the discriminatory act. 29 C.F.R. § 1614.105(a)(1). "Each discrete discriminatory act starts a new clock for filing charges alleging that act"—meaning that any claim arising out of an act not raised with the EEO counselor within forty-five days cannot be pursued. *Morgan*, 536 U.S. at 113. If the issue is not resolved within thirty days after initial contact, the EEO counselor must notify the employee of his right to file a formal administrative complaint, which in turn must be filed within fifteen days of that notice. 29 C.F.R. § 1614.105(a), (d); *id.* § 1614.106(b). The issues raised in the formal administrative complaint are the ones that may be addressed in later court proceedings. *Bain v. Off. of Att'y Gen.*, 648 F. Supp. 3d 19, 44 (D.D.C. 2022).

After a formal complaint is filed, the agency has 180 days to investigate; if the employee amends his complaint, the agency must "complete its investigation within the earlier of 180 days after the last amendment to the complaint or 360 days after the filing of the original complaint." 29 C.F.R. § 1614.106(e)(2); *id.* § 1614.108(e)-(f). The agency either provides a final decision within these time periods, or it does not. *Bain*, 648 F. Supp. 3d at 45. If it does, the employee has two choices: (1) appeal that decision to the EEOC within thirty days; or (2) file suit in federal court within ninety days. 42 U.S.C. § 2000e-16; 29 C.F.R. §§ 1614.401(a), 1614.402(a); *see In re James*, 444 F.3d 643, 644 (D.C. Cir. 2006). If the agency does not timely provide a final decision by the relevant deadline, the employee may file suit in federal court. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(b); *see In re James*, 444 F.3d at 644. These waiting periods are mandatory; a plaintiff who files suit early has failed to exhaust, and this defect cannot be cured by filing an

amended complaint in federal court after the requisite deadline has passed. *Murthy v. Vilsack*, 609 F.3d 460, 464-65 (D.C. Cir. 2010).

Mr. Williams initiated contact with his EEO counselor on two occasions: September 24, 2019 and March 23, 2022.  ECF No. 28 ¶¶ 20-21.  Each is detailed below.

### a. September 2019 informal complaint

Mr. Williams's September 2019 EEO complaint alleged that "Defendant was rejecting all of his previous course work and on-the-job training relevant to his FAC-C Certificate." *Id.* ¶ 5. He subsequently amended his complaint to include "allegations related to being denied the FAC-C based [on] unfair and discriminatory scrutiny of his course work, unfair and disparate rejection of his fulfilment package, and disparate and discriminatory demotion to GS-12." *Id.* ¶ 18; *see id.* ¶¶ 9 (alleging that Mr. Williams amended his complaint to include the denial of his FAC-C certification on November 18, 2019), 15 (alleging that Mr. Williams amended his complaint to include his demotion on May 29, 2020).  But Mr. Williams does not allege that he ever amended his September 2019 complaint to include claims of retaliation or hostile work environment. *See generally* ECF No. 28.[2]  Accordingly, Mr. Williams's September 2019 complaint and subsequent

---

[2] At one point in the complaint, Mr. Williams states that his "September 2019 EEOC charge alleged that he was being denied training opportunities as a result of having file[d] an internal EEO complaint."  ECF No. 28 ¶ 60.  That is inconsistent with his earlier representations of the September 2019 complaint. *Id.* ¶¶ 5, 9, 15, 18. The Agency points to the EEO Counselor's report concerning the September 2019 complaint, ECF No. 30-2, at 2, to show that Mr. Williams's September 2019 complaint did not allege retaliation, ECF No. 30-1, at 3 n.3, 6.  The court can consider this report without converting the Agency's motion to dismiss into one for summary judgment because the report is incorporated by reference into Mr. Williams's complaint. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015); *see id.* ("Incorporation by reference can . . . amplify pleadings where the document is not attached by the plaintiff, but is 'referred to in the complaint and [] integral to [the plaintiff's] claim.'" (alterations in original) (quoting *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004)).  Mr. Williams summarized the contents of the September 2019 complaint numerous times in his complaint, ECF No. 28 ¶¶ 5, 9, 15, 18, 60, and the contents of the document determine which of his claims were properly raised at the administrative level.  The report is thus "integral" to Mr. Williams's claims and the court

amendments did not administratively exhaust Counts I (retaliation) and II (hostile work environment).

With regard to Count III (race discrimination) and Count IV (age discrimination), Mr. Williams's September 2019 complaint served to exhaust his claims from the forty-five days before his September 24, 2019 complaint (August 10, 2019) through his final amendment, which, based on the complaint, happened on May 29, 2020.  ECF No. 28 ¶ 15.[3]  Mr. Williams has thus exhausted his race- and age-discrimination claims related to the denial of his FAC-C certification, the rejection of his fulfillment package, and his demotion for the period between August 10, 2019 and May 29, 2020.  But he has not administratively exhausted any race- or age-discrimination claims outside of that period, such as his allegations concerning Ms. Roberts's denial of his FAC-C in December 2016, ECF No. 28 ¶¶ 33-41; and the Agency's rejection of his coursework and previous experience before August 10, 2019, *id.* ¶¶ 47, 76-77.  Nor has he exhausted any race- or age-discrimination claims within the August 10, 2019 to May 29, 2020 period that do not relate to the denial of his FAC-C certification, the rejection of his fulfillment package, and his demotion. *Morgan*, 536 U.S. at 113.

### b. March 2022 informal complaint

Mr. Williams's March 23, 2022 informal complaint alleged "the continued denial of his FAC-C certification ([discrimination])[,] the denial of training opportunities (retaliation), and the

---

may consider it.  Reviewing the report in conjunction with the complaint, the court concludes that the 2019 charge did not allege retaliation.  *Kaempe*, 367 F.3d at 963 (explaining that the court need not "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice.").

[3] The Agency argues that the period should run only through February 7, 2020—the day Mr. Williams's informal complaint became a formal EEO charge.  ECF No. 30-1, at 6.  But Mr. Williams was permitted to amend his complaint after it escalated to a formal charge, 29 C.F.R. § 1614.106, and he did so on May 29, 2020, *see* ECF No. 28 ¶¶ 5, 15.

negative treatment from Ms. Lavon Shingler . . . (hostile work environment)." ECF No. 28 ¶ 21. Mr. Williams escalated this complaint to a formal administrative complaint on July 1, 2022.[4] *Id.* ¶ 22. The Agency argues that these claims are not yet ripe because Mr. Williams amended his administrative complaint several times. ECF No. 30-1, at 6-7. The most recent amendment occurred on February 3, 2023, which means that Mr. Williams had not waited until "180 days after the last amendment to the complaint or 360 days after the filing of the original complaint" when he first raised them in this case. 29 C.F.R. § 1614.106(e)(2); *see* ECF No. 30-1, at 6-7. Mr. Williams counters that "the timeliness of [his] claims is established by when he reached out to an EEO counselor" on March 23, 2023. ECF No. 33, at 4-5.

The Agency is correct. While the date that an employee reaches out to his EEO counselor is relevant to the forty-five day limit on reporting a discrete act of discrimination, 29 C.F.R. § 1614.105(a)(1); *Morgan*, 536 U.S. at 113, the 180-day period (or 360-day period where the employee amends his complaint) for filing in federal court is not triggered until the filing of a formal complaint, 29 C.F.R. § 1614.106(e). This means that the 360-day period runs from July 1, 2022 to June 26, 2023, and the 180-day period runs from February 3, 2023 to August 2, 2023. For purposes of Section 1614.106(e)(2), the earlier date controls, so Mr. Williams's claims stemming from the July 1, 2022 administrative complaint ripened in June 2023. Mr. Williams first raised his retaliation claim in his initial complaint, which was filed on July 1, 2022, ECF No. 1 ¶¶ 40-49, and he first raised his hostile work environment claim in his

---

[4] As explained, an aggrieved employee must file a formal discrimination complaint within forty-five days of their initial contact with an EEO counselor. *See* 29 C.F.R. § 1614.105(d) (explaining that an EEO counselor must notify the employee of their right to file a discrimination complaint within thirty days of contact, and that the employee shall file his formal complaint within fifteen days of such notice). That time period is extended if the employee engaged in an informal counseling period, like Mr. Williams did here. *Id.*; ECF No. 28 ¶ 22 (stating that the parties "engaged in preliminary informal counseling").

11

second amended complaint, which was filed on May 22, 2023, ECF No. 21-2. Mr. Williams raised both claims before (and in the case of his retaliation claim, well before) they became ripe for purposes of filing suit in federal court. Accordingly, Mr. Williams's retaliation and hostile work environment claims must be dismissed as unripe and Mr. Williams cannot, in the course of this suit, rely on allegations from the March 2022 complaint to support a discrete claim of race- or age-discrimination. *Morgan*, 536 U.S. 101 at 103.

### 2.     MSPB Proceedings

Finally, the Agency argues that Mr. Williams may not bring any discrimination claims related to his demotion and reduction in grade because he chose to challenge those actions through the MSPB process solely on the ground that they violated agency policy, not because they were discriminatory. ECF No. 28 ¶ 59. A federal employee who has been subject to an action that is appealable to the MSPB—like a demotion, 5 U.S.C. § 4303(e)—and believes that the action was discriminatory in whole or in part may appeal to the MSPB or pursue a claim with the EEOC, but he may not avail himself of both remedies. 29 C.F.R. § 1614.302; *Jones v. U.S. Dep't of Just.*, 111 F. Supp. 3d 25, 31 (D.D.C. 2015). Mr. Williams chose to appeal his demotion to the MSPB. ECF No. 28 ¶¶ 57-60; ECF No. 1-5. Once there, he forfeited his discrimination claims by not raising them. *See McAdams v. Reno*, 64 F.3d 1137, 1142 (8th Cir. 1995). As a result, he cannot bring any race- or age-discrimination claims related to his demotion. *Id.*

\*     \*     \*

Given Mr. Williams's failure to exhaust his retaliation and hostile work environment claims, the court will dismiss Counts I (retaliation) and Count II (hostile work environment) in their entirety. Mr. Williams may proceed with Count III (race discrimination) and Count IV (age discrimination) insofar as they relate to the denial of his FAC-C certification and the rejection of

his fulfillment package (but not his demotion) during the period from August 10, 2019, to May 29, 2020.[5]

### B.     Failure to State a Claim

The Agency argues that many of the claims raised in Mr. Williams's second amended complaint fail to meet the plausibility standard. ECF No. 30-1, at 8-10; ECF No. 35, at 3-5. But none of these arguments concern Mr. Williams's exhausted race- and age-discrimination claims about the denial of his FAC-C and the rejection of his fulfillment package during the time period between August 10, 2019, and May 29, 2020. ECF No. 30-1, at 8-10 (arguing for dismissal of Mr. Willliams's retaliation claim, his race-discrimination claim concerning his demotion, and his hostile work environment claim). Accordingly, the exhausted portions of Counts Three and Four may proceed.

### C.     Leave to Amend the Complaint

The court may deny leave to amend where amendment would be futile. *Firestone*, 76 F.3d at 1208 (quoting *Foman*, 371 U.S. at 182). Amendment is futile "if the proposed claim would not survive a motion to dismiss." *James Madison Ltd. by Hecht*, 82 F.3d at 1099. Such is the case here. Most of the language in Mr. Williams's proposed third amended complaint concerns whether the claims stemming from his March 2022 informal complaint of discrimination are ripe. ECF No. 32-1 ¶¶ 23-27 (describing the administrative process for Mr. Williams's March 23, 2022 complaint and contending that the "claim is now properly before this Court"); ECF No. 33, at 5 (arguing that "[t]he Third Amended Complaint renders Defendant's arguments about timeliness

---

[5] Mr. Williams may draw upon unexhausted claims as facts and evidence in support of his exhausted race- and age-discrimination claims even though they are not independently actionable. *Morgan*, 536 U.S. 101 at 113 (explaining that unexhausted discrete acts can be used as "background evidence in support of a timely claim").

moot"). But, as explained, "the filing of an amended complaint after the [relevant 180- or 360-day] period [has] expired cannot cure the failure to exhaust." *Murthy*, 609 F.3d at 465; *see, e.g., Davila v. Mayorkas*, 22-CV-357, 2023 WL 2072455, at *4 (D.D.C. Feb. 17, 2023); *Maybank v. Speer*, 251 F. Supp. 3d 204, 207 (D.D.C. 2017). Thus, amendment would be futile as it relates to Mr. Williams's unripe claims stemming from his March 2022 informal complaint.

The remaining language in the proposed amended complaint is two conclusory statements to support Mr. Williams's race-discrimination claim. ECF No. 32-1 ¶¶ 129-30 (stating that the Agency "applied its rules, policies, and standards to [Mr. Williams] differently and more harshly than it applies those rules to non-African Americans" and that the "Defendant violated Title VII by applying disparate standards to African Americans, and by being more flexible and lenient to non-African Americans"). These are legal conclusions, which the court is not required to accept. *Iqbal*, 556 U.S. at 678. Accordingly, allowing their addition to the complaint would serve no purpose.

## V.  Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss in Part, ECF No. 30, is **GRANTED**. Counts I and II are **DISMISSED** in their entirety and Counts III and IV are **DISMISSED** insofar as they do not pertain to the denial of Mr. Williams's FAC-C certification and the rejection of his fulfillment package during the period from August 10, 2019 to May 29, 2020. Plaintiff's Motion for Leave to Amend, ECF No. 32, is **DENIED**. Defendant shall file an answer to the complaint on or before September 13, 2024. *See* Fed. R. Civ. P. 12(a)(4)(A).

**SO ORDERED.**

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date: August 30, 2024